**BOIES SCHILLER FLEXNER LLP**
Joshua I. Schiller (SBN 330653)
44 Montgomery Street, 41st Floor
San Francisco, CA 94104
Telephone: (415) 293-6800
jischiller@bsfllp.com

**BOIES SCHILLER FLEXNER LLP**
Robert D. Gordon (*pro hac vice*)
55 Hudson Yards, 20th Floor
New York, NY 10001
Telephone: (212) 446-2372
rgordon@bsfllp.com

*Attorneys for Alleged Debtor The Fay San Jose, LLC*

## UNITED STATES BANKRUPTCY COURT

## NORTHERN DISTRICT OF CALIFORNIA

## SAN JOSE DIVISION

| | |
|---|---|
| In re:<br><br>THE FAY SAN JOSE, LLC,<br><br>     Alleged Debtor. | Case No. 5:25-BK-51774 SLJ<br><br>**Chapter 7**<br><br>**THE FAY SAN JOSE, LLC'S MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION FOR ATTORNEYS' FEES, COSTS, AND PUNITIVE DAMAGES**<br><br>Judge:     Hon. Stephen L. Johnson<br>Date:      March 31, 2026<br>Time:      2:00 p.m.<br>Location:  Hybrid Hearing |

Case: 25-51774  Doc# 54  Filed: 02/20/26  Entered: 02/20/26 11:45:55  Page 1 of 19

# **TABLE OF CONTENTS**

PRELIMINARY STATEMENT ........................................................................................................... 1

STATEMENT OF FACTS ............................................................................................................... 3

LEGAL STANDARD ..................................................................................................................... 6

ARGUMENT ................................................................................................................................. 7

I.  The Fay Is Entitled to an Award of its Attorneys' Fees and Costs. .......................................... 7

II. The Fay Is Entitled to an Award of Punitive Damages. ........................................................... 11

III. Suffolk and the Joinder Petitioners Should Be Held Jointly and Severally Liable for the Award.………………………………………………………………………………………..14

CONCLUSION .............................................................................................................................. 15

Case: 25-51774 THE FAY'S MEMORANDUM OF POINTS & AUTHORITIES ISO MOTION FOR FEES
Doc# 54 Filed 02/20/26 Entered 02/20/26 11:49:53 Page 2 of 19
Case No. 5:25-BK-51774

# TABLE OF AUTHORITIES

## CASES

*BFP v. Resolution Trust Corp.*,
511 U.S. 531 (1994). ............................................................................................... 6, 10

*Carmel Development Company, Inc. v. Anderson*,
48 Cal. App. 5th 492 (2020). ............................................................................................ 8

*Higgins v. Vortex Fishing Sys., Inc.*,
379 F.3d 701 (9th Cir. 2004) ...................................................................... 7, 8, 9, 10

*In re Anmuth Holdings LLC*,
600 B.R. 168 (Bankr. E.D.N.Y. 2019) ...................................................................Passim

*In re Cent. Park Ests., LLC*,
485 B.R. 72 (Bankr. S.D.N.Y. 2013) ................................................................. 10, 13

*In re John Richards Homes Bldg. Co., L.L.C.*,
439 F.3d 248 (6th Cir. 2006) ...................................................................................... 13

*In re Kidwell*,
158 B.R. 203 (Bankr. E.D. Cal. 1993) ........................................................... 6, 12, 14

*In re Landmark Distributors, Inc.*,
189 B.R. 290 (Bankr. D.N.J. 1995) ............................................................................ 13

*In re Mi La Sul*,
380 B.R. 546 (Bankr. C.D. Cal. 2007) ...................................................................... 12

*In re S. California Sunbelt Devs., Inc.*,
608 F.3d 456 (9th Cir. 2010) ............................................................................Passim

*In re Wavelength, Inc.*,
61 B.R. 614 (9th Cir. B.A.P. 1986) ........................................................................ 7, 11

*In re WLB-RSK Venture*,
296 B.R. 509 (Bankr. C.D. Cal. 2003) ...................................................................... 12

*State Farm Mut. Auto. Ins. Co. v. Campbell*,
538 U.S. 408 (2003) ...................................................................................................... 13

Case: 25-51774    Doc# 54    Filed: 02/20/26    Entered: 02/20/26 11:49:55    Page 3 of 19

THE JAY'S MEMORANDUM OF POINTS & AUTHORITIES ISO MOTION FOR FEES
Case No. 5:25-BK-51774

**STATUTES**

U.S.C. § 303(b)............................................................................................................................Passim

U.S.C. § 303(c),.................................................................................................................................6, 14

U.S.C. § 303(i)...............................................................................................................................Passim

U.S.C. § 303(i)(1)..........................................................................................................................Passim

U.S.C. § 303(i)(2)..........................................................................................................................Passim

iv

Case: 25-51774    Doc# 54    Filed: 02/20/26    Entered: 02/20/26 11:49:53    Page 4 of 19

## PRELIMINARY STATEMENT

This motion seeks an award of attorneys' fees, costs, and punitive damages pursuant to 11 U.S.C. § 303(i) following this Court's dismissal of the involuntary Chapter 7 petition (the "**Petition**") filed by Petitioner Suffolk Construction Company, Inc. ("**Suffolk**") against Alleged Debtor The Fay San Jose, LLC ("**The Fay**" or "**Alleged Debtor**"). Congress enacted Section 303(i) of the Bankruptcy Code to deter the precise conduct at issue here: the abusive use of an involuntary bankruptcy petition as a litigation tactic and leverage device, rather than as a legitimate mechanism to protect the collective interests of creditors.

This Court has already made the key findings that trigger Section 303(i). In its Order Granting The Fay's Motion to Dismiss (D.E. 40, hereinafter the "**Order**"), the Court dismissed the Petition for failure to comply with Section 303(b) and expressly found that the case was filed for an improper purpose indicative of bad faith. (*Id.* at 5–8, 10–12). The Court further found that Suffolk falsely told The Fay's senior lender that an involuntary petition had been filed on November 10, 2025, when it had not, and that a Chapter 7 case was a "very poor vehicle" to accomplish Suffolk's stated goals where state foreclosure procedures were adequate. (*Id.* at 10–11). Suffolk filed the Petition only after failing to enjoin a regularly noticed, nonjudicial foreclosure in California Superior Court. As the Court observed, Suffolk was seeking "a second chance after failing in state court." (*Id.* at 11).

The Court also held that Suffolk's Petition failed the threshold requirements of Section 303(b) because the petitioning creditors did not hold qualifying unsecured claims aggregating at least $21,050. In particular, Suffolk's alleged claim for "prejudgment contractual interest on retention" was, by Suffolk's own characterization in state court and under California law, secured by its mechanic's lien and thus could not count as an unsecured claim for Section 303(b) purposes. (*Id.* at 5–7). The joinder petitioners' unsecured amounts were far too small in the aggregate to satisfy the statute either. (*Id.* at 7). These deficiencies were apparent on the face of the Petition at the time it was filed and fully support an award under Section 303(i).

Suffolk's misuse of the bankruptcy process forced The Fay to incur significant attorneys' fees and costs on an emergency basis to defend itself and protect its rights. The Fay moved as quickly and efficiently as possible to avoid harm to its business and minimize expenses, securing dismissal

1

Case: 25-51774 THE FAY'S MEMORANDUM OF POINTS & AUTHORITIES IN SUPPORT OF FEES
Doc# 54 Filed: 02/20/26 Entered: 02/20/26 13:49:53 Page 5 of 19
Case No. 5:25-BK-51774

approximately two months after the case was filed. Under Section 303(i)(1), The Fay is presumptively entitled to recover the fees and costs it incurred to obtain that dismissal. The Fay therefore seeks $859,362.00 in attorneys' fees and $13,796.46 in costs, for a total award of $873,158.46, all of which were directly caused by Suffolk's filing and the urgent efforts required to protect The Fay's rights.

These fees are reasonable given the matter's urgency and complexity. Following Suffolk's filing, The Fay's counsel had to assemble a team and proceed on an expedited basis to investigate the issues (including Suffolk's false assertion that a stay was in place to halt the foreclosure), analyze the Petition and joinders, and prepare a motion to dismiss supported by multiple declarations and exhibits. This required substantially more factual work than a typical Rule 12 motion. Counsel also responded to Suffolk's numerous arguments in its opposition brief (which the Court found meritless), prepared for and argued at the hearing, evaluated Suffolk's expansive discovery requests, and then prepared this motion for fees, costs, and damages. In light of the stakes and the speed required to secure dismissal and prevent further harm to The Fay, the resulting fees are fully justified.

Additionally, because the Court found that Suffolk filed the Petition for an improper purpose and in bad faith, punitive damages are warranted under Section 303(i)(2). Suffolk's conduct—filing a facially defective Petition, misrepresenting that a case had been filed to halt a foreclosure, and using bankruptcy as a tactical end-run around an adverse state-court ruling—falls squarely (and quintessentially) within the category of abuses that Section 303(i)(2) is designed to deter. The Fay therefore seeks punitive damages in the amount of $1,700,000 to ensure that Suffolk, a national company with over $9 billion in annual revenue, and others are deterred from improperly weaponizing the involuntary bankruptcy process in ordinary commercial disputes. Public reporting on the filing also caused irreparable reputational harm to the building, underscoring the need for a meaningful deterrent.

Suffolk's conduct after the Court's decision further underscores why an award of fees, costs, and damages is warranted. Following dismissal of the Petition, Suffolk's counsel threatened to once again seek emergency relief to halt the foreclosure sale, forcing The Fay's counsel to incur additional fees preparing for the possibility of an emergency court appearance. (*See* Declaration of Joshua I. Schiller in Support of Motion for Attorneys' Fees, Costs, and Punitive Damages ("**Schiller**

2

**Declaration**") ¶¶ 2–4). Despite The Fay's request for clarity, Suffolk's counsel refused to confirm whether any such application would in fact be made, requiring The Fay's counsel to remain on standby and continue contingency preparations—only for the threatened emergency relief to never materialize. (*Id.* ¶¶ 3–4). Thereafter, The Fay provided Suffolk with the amount of its attorneys' fees and costs in an effort to resolve the matter without further motion practice, but Suffolk offered no substantive response and ultimately proposed paying zero dollars. (*Id.* ¶¶ 2, 5). This conduct unnecessarily increased The Fay's fees and further demonstrates Suffolk's unreasonable approach to this litigation, independently justifying the relief requested here.

Undeterred by the Court's decision, which clearly articulated multiple bases for dismissal of the case and a finding of bad faith, and notwithstanding that the foreclosure sale of The Fay's property had been completed (and thus no assets remain), on February 5, 2026, Suffolk compounded its vexatious conduct by filing a Notice of Appeal from the Court's Order (the "**Appeal**"). (D.E. 43). As a result, The Fay continues to incur fees and costs defending itself against Suffolk's litigation tactics, and therefore reserves the right to supplement this Motion and seek an additional award. However, because Section 303(i) authorizes an award of fees and damages upon dismissal, and nothing in the statute requires the Court to defer that relief pending the outcome of an appeal, The Fay seeks an award now. At a minimum, Suffolk should be required to post a bond under Section 303(e) to secure full payment of those fees.

Suffolk was primarily responsible for this bad faith conduct and should in the first instance pay for any fees, costs, and damages awarded by the Court. However, to the extent Suffolk fails to pay, the joinder petitioners—BEI Construction, Inc., United Systems Fire & Security, Silicon Valley Mechanical, Inc., and Iron Mechanical, Inc.—should be held jointly and severally liable.

## STATEMENT OF FACTS

The Fay is a single-asset real estate entity whose sole asset, at the time the Petition was filed, was a newly constructed, 23-story, multi-family residential tower located in San Jose, California (the

THE FAY'S MEMORANDUM OF POINTS & AUTHORITIES ISO MOTION FOR FEES
Case No. 5:25-BK-51774

"**Property**").[1]  (Order at 2; D.E. 9 ¶ 2).  To finance construction of the Property, The Fay obtained approximately $182.5 million in senior secured financing from an affiliate of Madison Realty Capital (the "**Senior Lender**").  (Order at 2; D.E. 9 ¶ 3).  The Senior Lender's loan was secured by a first-priority deed of trust.  Suffolk—one of the largest construction contractors in the country with over $9 billion in annual revenue and 3,000 employees—served as the general contractor for construction, which was substantially completed in late 2024.  (Order at 2; D.E. 9 ¶ 4).

After encountering financial difficulties, The Fay defaulted under the Senior Lender's loan documents, and the Senior Lender commenced nonjudicial foreclosure proceedings pursuant to California law.  (Order at 2–3; D.E. 9 ¶ 6).  The foreclosure sale was duly noticed and scheduled to proceed on the morning of November 10, 2025.  (Order at 2–3; D.E. 8 ¶ 5).

Meanwhile, Suffolk asserted that it was owed certain amounts under its construction contract with The Fay and recorded a junior mechanic's lien that was subordinate to the Senior Lender's deed of trust and subject to potential extinguishment upon foreclosure.  In July 2025, Suffolk filed a lawsuit against The Fay in the Superior Court of California, County of Santa Clara, seeking to enforce its mechanic's lien and asserting related claims.  (D.E. 8 ¶ 3; *see* D.E. 6 at 5–12).  As the foreclosure date approached, Suffolk sought ex parte relief to halt the foreclosure sale.  (Order at 3; D.E. 8 ¶ 3).

On November 4, 2025, the Superior Court denied Suffolk's application for a temporary restraining order and the appointment of a receiver.  (Order at 3; *see* D.E. 6 at 125–28).  The court rejected Suffolk's claim of irreparable harm, characterizing the impending sale as "unremarkable" and "merely a foreclosure on a first position deed of trust."  (D.E. 6 at 127).  Consistent with California law, the court recognized the potential extinguishment of Suffolk's junior lien as an outcome "the law tolerates."  (*Id.*).  The court further found that enjoining the sale would cause greater harm to The Fay and other stakeholders than allowing the sale to proceed.  (*Id.* at 127–28).

Having failed to obtain injunctive relief in state court, Suffolk turned to the bankruptcy forum.  Approximately one hour before the scheduled foreclosure sale on November 10, 2025, Suffolk's

---

[1]  The foreclosure sale was conducted on January 28, 2026, following the Court's dismissal of the Petition.

Case: 25-51774    Doc# 54    Filed: 02/20/26    Entered: 02/20/26 13:43:53    Page 8 of 19

counsel contacted the Senior Lender and represented that an involuntary petition had been filed against The Fay and that the automatic stay was in place. (Order at 3; D.E. 8 ¶¶ 6–8). Relying on this representation, the Senior Lender halted the foreclosure sale. (D.E. 8 ¶ 9).

As The Fay and the Senior Lender later discovered, and as the Court has recognized, Suffolk's representation "was in fact false." (Order at 3). The Petition was actually filed on November 12, 2025—two days later than Suffolk had represented. (*Id.*; D.E. 8 ¶ 10). By Suffolk's own admission, it did not correct its misrepresentation after learning that its attempted November 10 filing had been rejected. Instead, Suffolk subsequently filed its bare-bones Petition only after the foreclosure had already been stopped. (Order at 3).

On November 20, 2025, The Fay promptly moved to dismiss the Petition on multiple independent grounds, including failing to meet the requirements of Section 303(b) and for bad faith. (*See* D.E. 5). The Fay also requested attorneys' fees, costs, and punitive damages under Section 303(i). (*Id.* at 14). On December 4, 2025, four alleged creditors—BEI Construction, Inc., United Systems Fire & Security, Silicon Valley Mechanical, Inc., and Iron Mechanical, Inc.—filed joinders (the "**Joinders**"). (*See* D.E. 20–23).

On December 11, 2025, the Court held a hearing on The Fay's motion to dismiss. During the hearing, the Court expressed significant skepticism regarding Suffolk's Petition and the Joinders and noted that Section 303(i) "provide[s] remedies if it's determined that the case was filed in bad faith." (Transcript of Oral Argument (Dec. 11, 2025) at 15:16–19, *In re The Fay San Jose, LLC*, No. 25-51774 SLJ (Bankr. N.D. Cal.)).

With the Court's views made clear, and in an effort to avoid further litigation, The Fay extended a proposal to Suffolk: if Suffolk voluntarily dismissed the Petition, The Fay would withdraw its request for attorneys' fees, costs, and damages. (*See* Schiller Declaration Ex. 1). Suffolk rejected this reasonable proposal (*see id.* Ex. 2) and, instead, proceeded to serve expansive and burdensome discovery requests on The Fay and third parties, even though The Fay's motion to dismiss remained pending and no Rule 26(f) conference had been held.

On January 23, 2026, the Court granted The Fay's motion to dismiss the Petition for failure to satisfy Section 303(b) and because it was filed in bad faith. The Court found that Suffolk's claim for

5

$228,153.94 in "prejudgment contractual interest on retention" was, by Suffolk's own admission in state court and under California law, secured by its mechanic's lien and therefore not a qualifying unsecured claim under Section 303(b). (Order at 5–7). As to the four Joinders, the Court found that a portion of their claims was also secured by a mechanic's lien, and the remaining unsecured portions were far too small in aggregate to satisfy Section 303(b). (*Id.* at 7).

In addition, the Court found that "the Involuntary Petition is subject to dismissal on bad faith grounds." (*Id.* at 12). Specifically, the Court stated that "Suffolk was wrong to tell Lender a case had been filed on November 10, 2025, when it had not" and that "[c]oming to the bankruptcy court to get a second chance after failing in state court evinces an improper purpose indicative of bad faith forum shopping." (*Id.* at 10–11). The Court also rejected Suffolk's argument that the involuntary bankruptcy would serve the purpose of ensuring the Property is marketed to a high standard beyond what is required under state foreclosure law. It noted that Suffolk had presented no evidence that the Property was worth more than the Senior Lender's secured debt and that a Chapter 7 proceeding "is a very poor vehicle" for achieving Suffolk's purported marketing goals. (*Id.* at 11). Accordingly, the Court held that "[u]nder these facts, a Chapter 7 proceeding will only result in unnecessary costs and delay. This weighs in favor of finding this case was filed for an improper purpose." (*Id.*). The Court also noted that Suffolk's argument to override established state law foreclosure procedures is contrary to well-settled Supreme Court case law, *BFP v. Resolution Trust Corp.*, 511 U.S. 531, 540 (1994). (*Id.* at 12).

The Court directed the parties to confer regarding The Fay's request for fees, costs, and damages and, absent agreement, invited a motion under Section 303(i). (*Id.* at 12). The parties conferred on January 25, 2026, and February 6, 2026, but were unable to reach an agreement. Counsel for The Fay thereafter followed up with Suffolk's counsel on two occasions in a further effort to reach agreement and avoid burdening the Court with a motion. Suffolk's counsel, however, provided no substantive response and ultimately proposed paying zero dollars. (Schiller Declaration ¶¶ 2, 5).

## LEGAL STANDARD

Section 303(i) of the Bankruptcy Code provides that, upon dismissing an involuntary petition other than on the consent of all parties, the court may award the alleged debtor its costs and reasonable attorneys' fees. 11 U.S.C. § 303(i)(1). If the petition was filed in bad faith, the court may also award

6

Case: 25-51774    Doc# 54    Filed: 02/20/26    Entered: 02/20/26 11:43:53    Page 10 of
Case No. 5:25-BK-51774
19

actual damages and punitive damages against the petitioner.  *Id.* § 303(i)(2).  "All petitioners, even those who have joined under section 303(c), are vulnerable to this remedy that arises upon dismissal of the case."  *In re Kidwell*, 158 B.R. 203, 216 (Bankr. E.D. Cal. 1993).

In the Ninth Circuit, "[w]hen an involuntary bankruptcy petition is dismissed, the debtor is presumed to be entitled to reasonable fees and costs."  *In re S. California Sunbelt Devs., Inc.*, 608 F.3d 456, 462 (9th Cir. 2010) (internal quotation marks omitted).  Indeed, "any petitioning creditor in an involuntary case . . . should expect to pay the debtor's attorney's fees and costs if the petition is dismissed."  *Higgins v. Vortex Fishing Sys., Inc.*, 379 F.3d 701, 707 (9th Cir. 2004) (internal quotation marks omitted) (alteration in original).  The purpose of this presumption is to "reinforce the idea that the filing of an involuntary petition should not be lightly undertaken" and to "discourage inappropriate and frivolous filings."  *Id.* (cleaned up).  The fees and costs incurred in litigating a Section 303(i) request (*i.e.*, "fees on fees"), including a request for damages, are also "plainly recoverable."  *Sunbelt*, 608 F.3d at 463–64.

In deciding an award of attorneys' fees and costs under Section 303(i)(1), the court should consider the totality of the circumstances, including "1) the merits of the involuntary petition, 2) the role of any improper conduct on the part of the alleged debtor, 3) the reasonableness of the actions taken by the petitioning creditors, and 4) the motivation and objectives behind filing the petition."  *Higgins*, 379 F.3d at 707 (internal quotation marks omitted).  "[B]ad faith is not a prerequisite to awarding attorney's fees and costs under § 303(i)(1)."  *Id.* at 706.

As for punitive damages, "Section 303(i)(2) expressly authorizes a stand alone award of punitive damages . . . 'even in the absence of or in addition to actual damages.'"  *Sunbelt,* 608 F.3d at 465 (quoting *In re Wavelength, Inc.*, 61 B.R. 614, 621 (9th Cir. B.A.P. 1986)).  "[T]he sole precondition is a showing of bad faith."  *Id.*

**ARGUMENT**

**I.**     **The Fay Is Entitled to an Award of its Attorneys' Fees and Costs.**

When an involuntary petition is dismissed, there is a rebuttable presumption in the Ninth Circuit that the alleged debtor is entitled to recover its reasonable attorneys' fees and costs under Section 303(i)(1).  *Sunbelt*, 608 F.3d at 462; *Higgins*, 379 F.3d at 707.  The presumption exists to

7

Case: 25-51774    Doc# 54    Filed: 02/20/26    Entered: 02/20/26 11:48:53    Page 11 of
Case No. 5:25-BK-51774
19

ensure that the extraordinary remedy of an involuntary case is "not [] lightly undertaken" and to deter "inappropriate and frivolous filings." *Higgins*, 379 F.3d at 707 (internal quotation marks omitted). Here, the petitioning creditors cannot overcome that presumption. Applying the totality-of-the-circumstances factors from *Higgins* confirms that The Fay should be awarded all of its fees and costs incurred in connection with the Petition.

*First*, the merits of the Petition were profoundly lacking. The Court dismissed the case for failure to comply with Section 303(b) because the petitioning creditors did not hold qualifying unsecured claims aggregating at least $21,050. As the Court found, Suffolk's supposed $228,153.94 claim for "prejudgment contractual interest on retention" was, by Suffolk's own admission in state court and under California law, secured by its own mechanic's lien. (Order at 5–7). The Court held that "Suffolk's argument in this proceeding that it has an unsecured claim for interest due cannot be squared with its contention before the Superior Court," and rejected Suffolk's implausible reading of *Carmel Development Company, Inc. v. Anderson*, 48 Cal. App. 5th 492 (2020). (*Id.* at 6–7). As to the four Joinders, BEI's claim was likewise secured, and the remaining joinder petitioners' unsecured amounts collectively totaled only $2,362.50—"far below" the statutory threshold. (*Id.* at 7).

These dispositive defects were apparent from the face of the Petition, and the Joinders and Suffolk had no path around them. Suffolk did not substantively engage with several of the arguments raised in The Fay's motion to dismiss, and the Court rejected the arguments it did advance, characterizing Suffolk's challenge to The Fay's sworn creditor list as "simple speculation" and noting that petitioners offered no evidence to carry their burden. (*Id.* at 7–8, 10). Each of these findings supports an award of fees and costs under Section 303(i)(1).

*Second*, there was no improper conduct by The Fay. After Suffolk falsely represented that an automatic stay was in effect, The Fay acted promptly and appropriately, moving to dismiss only eight days after the Petition was filed and endeavoring to minimize expenses to the extent possible under the circumstances. Following briefing and the hearing, The Fay continued to seek a resolution without further Court involvement, offering to withdraw its request for fees and damages if Suffolk would voluntarily dismiss. (*See* Schiller Declaration Ex. 1). Suffolk rejected that offer. (*See* Schiller Declaration Ex. 2). After the Court dismissed the Petition, The Fay renewed its efforts to settle the

issue of fees and damages but was again rebuffed. The Order contains no criticism of The Fay's conduct; to the contrary, the Court expressly permitted The Fay to file this motion for fees, costs, and punitive damages if the parties could not reach agreement. (Order at 12). This factor, therefore, favors a full fee award.

*Third*, the petitioners' actions were objectively unreasonable. Beyond filing a Petition that was plainly deficient on its face, Suffolk acted in bad faith and without any proper bankruptcy purpose.[2] As the Court found, Suffolk's representation one hour before the scheduled foreclosure that an involuntary petition had been filed and the automatic stay was in effect "was in fact false." (*Id.* at 3; *see also id.* at 10). In fact, Suffolk only filed its bare-bones Petition two days later, after the sale had already been halted. (*Id.*). The Court further observed that "the timing of the case is suspect," noting that it was initiated just days after Suffolk failed to stop the foreclosure in state court, and concluded that "[c]oming to the bankruptcy court to get a second chance after failing in state court evinces an improper purpose indicative of bad faith." (*Id.* at 10–11).

Despite these issues, Suffolk rejected The Fay's reasonable offer to waive fees in exchange for a voluntary dismissal. (*See* Schiller Declaration Exs. 1, 2). This rejection further supports awarding full fees and costs. *See In re Anmuth Holdings LLC*, 600 B.R. 168, 189 (Bankr. E.D.N.Y. 2019) (awarding fees and costs where petitioning creditors ignored a letter from alleged debtor's counsel "presenting an opportunity for the Petitioning Creditors to seek dismissal and potentially avoid or mitigate further liability for attorneys' fees").

The Joinders were equally problematic. The Court found that, other than BEI, the Joinders "[were] silent on the size of the claims being asserted," and that the only unsecured figures in the record totaled $2,362.50—an amount that did not come close to salvaging the defective Petition. (Order at 3, 7). The Court also rejected Suffolk's unsupported speculation that some of The Fay's listed creditors may hold unenforceable debts that should be disqualified due to potential preference liability. (*Id.* at 8). These rulings underscore that the Joinders increased the cost of The Fay's defense

---

[2] Although bad faith is *not* a prerequisite to an award of fees and costs under Section 303(i)(1), *Higgins*, 379 F.3d at 706, the Court's findings on this point confirm that Suffolk did not act reasonably and that fee shifting is therefore appropriate.

9

Case: 25-51774    Doc# 54    Filed: 02/20/26    Entered: 02/20/26 11:43:53    Page 13 of
Case No. 5:25-BK-51774
19

without curing any defect, which is precisely the kind of needless expense that Section 303(i)(1) is designed to shift to the petitioners.

*Finally*, Suffolk's motives and objectives strongly support awarding full fees and costs. As discussed above, the Court has already found that Suffolk acted in bad faith and with an improper purpose. Its stated rationale for filing the Petition—that a bankruptcy was needed because the Property could be marketed for a price exceeding the senior debt—was, as the Court correctly recognized, unpersuasive and contrary to the Supreme Court's ruling in *BFP v. Resolution Trust Corp.* (*Id.* at 11–12). A Chapter 7 case is a "very poor vehicle" for such marketing and "will only result in unnecessary costs and delay," particularly where state foreclosure procedures are adequate to address Suffolk's purported concerns. (*Id.* at 11–12). Suffolk's refusal to voluntarily dismiss once the defects in its Petition were laid bare further underscores that its objective was not to pursue a legitimate bankruptcy purpose. Instead, as The Fay argued in its motion to dismiss, Suffolk's true aim was settlement leverage, including pressure relating to potential personal liability exposure under a non-debtor third-party guarantor's bad boy guarantee. (*See* D.E. 5 at 13). These improper motives weigh heavily in favor of awarding The Fay its full fees and costs to deter this kind of misuse of the involuntary bankruptcy process. *See Higgins*, 379 F.3d at 707 (explaining that the purpose of Section 303(i)(1) is "to discourage inappropriate and frivolous filings" (internal quotation marks omitted)); *see also In re Cent. Park Ests., LLC*, 485 B.R. 72, 76 (Bankr. S.D.N.Y. 2013) (abuse of the involuntary process "harm[s] the entire legal system").

Accordingly, the requested fees and costs are recoverable in full under Section 303(i)(1), including "fees on fees" incurred to prepare and litigate this motion. *See Sunbelt*, 608 F.3d at 463–64 (fees incurred litigating Section 303(i) claims are recoverable). As of February 5, 2026, The Fay has incurred $859,362.00 in attorneys' fees and $13,796.46 in costs in connection with this involuntary case, as detailed in Exhibit 3 to the Schiller Declaration.[3] These amounts are reasonable in light of the matter's complexity and urgency—the work required quick legal and factual investigation, drafting

---

[3] Note that these figures do not capture—and therefore underrepresent—all attorney time and costs spent in preparing this Motion due to the standard lag in time entry. The Fay reserves all rights to amend the amounts sought to reflect additional work expended in this matter.

Case: 25-51774    Doc# 54    Filed: 02/20/26    Entered: 02/20/26 11:48:53    Page 14 of
Case No. 5:25-BK-51774
19

and filing of the motion to dismiss with supporting declarations and exhibits, preparation for and attendance at oral argument, and subsequent Section 303(i) motion practice. By way of context, the anticipated fees represent well under 1% of the $182.5 million senior loan at issue. Because The Fay will continue to incur fees to prepare any reply, argue this motion, and address the pending Appeal, it respectfully requests an award of no less than $873,158.46, without prejudice to supplementing its request to capture additional work.

Section 303(i) permits an award of fees and costs once "the court dismisses a petition," and nothing in the statute requires the Court to defer that relief pending the outcome of an appeal. 11 U.S.C. § 303(i). Suffolk's Appeal does not alter the fact that The Fay has already incurred substantial fees to defeat a petition this Court has dismissed as facially defective and filed in bad faith. Allowing Suffolk to delay liability indefinitely by pursuing an appeal would reward precisely the kind of tactical abuse the statute is meant to deter. If the Court nonetheless determines that a final fee award should await resolution of the Appeal, it should at a minimum require Suffolk to post a bond under Section 303(e) securing full payment of those fees.

**II.      The Fay Is Entitled to an Award of Punitive Damages.**

The egregious nature of Suffolk's conduct makes this a clear case for punitive damages. "Section 303(i)(2) expressly authorizes a stand alone award of punitive damages," and "the sole precondition is a showing of bad faith." *Sunbelt*, 608 F.3d at 465; *see also Wavelength*, 61 B.R. at 621 (punitive damages authorized "even in the absence of or in addition to actual damages" (internal quotation marks omitted)). The purpose of such an award "is to punish a wrongdoer and deter similar conduct in the future." *Anmuth*, 600 B.R. at 202. Given the Court's findings of bad faith, a substantial punitive damages award is warranted to punish Suffolk's misconduct and deter its repetition.

To begin, the Court found that Suffolk acted in bad faith by falsely telling the Senior Lender, on the morning of the scheduled foreclosure, that an involuntary petition had been filed and that the automatic stay was in effect. (Order at 10). This blatant bad-faith action is extraordinarily egregious. Only two days later, after the foreclosure had already been halted based on that false representation, did Suffolk actually file its bare-bones Petition. (*Id.*). That Petition was deficient on its face, failing multiple requirements of Section 303(b). *See* pp. 5–6 , 8, *supra*. The Court also concluded that "the

THE FAY'S MEMORANDUM OF POINTS & AUTHORITIES ISO MOTION FOR FEES
Case No. 5:25-BK-51774

timing of the case is suspect," noting that Suffolk turned to bankruptcy court "just days" after failing to obtain relief in state court. (Order at 10). As the Court put it, "[c]oming to the bankruptcy court to get a second chance after failing in state court evinces an improper purpose indicative of bad faith forum shopping." (*Id.* at 11 (citing *In re WLB-RSK Venture*, 296 B.R. 509, 514–15 (Bankr. C.D. Cal. 2003)). It further found that a Chapter 7 case is a "very poor vehicle" for accomplishing Suffolk's purported marketing objectives and "will only result in unnecessary costs and delay." (*Id.*). On these bases, the Court concluded "that the Involuntary Petition is subject to dismissal on bad faith grounds." (*Id.* at 12).

In addition, even after the Court granted dismissal, Suffolk suggested during a meet and confer the Sunday following the decision that it would again pursue emergency relief to halt the foreclosure. (Schiller Declaration ¶ 2). This forced The Fay's counsel to devote further time and resources to contingency planning that ultimately proved unnecessary. Indeed, a few days later, counsel for The Fay followed up with Suffolk's counsel about whether Suffolk intended to pursue emergency relief, but Suffolk's counsel refused to respond. (*Id.* at ¶¶ 3–4). This left The Fay's counsel on standby and continuing to pursue contingency planning that, in the end, was not required. (*Id.*).

And finally, in reckless disregard for the law, the consumption of judicial resources, and the inflicting of unnecessary damages on The Fay—and after the foreclosure sale of the Property had been completed—Suffolk commenced the Appeal from the Court's dismissal.

The multitude of improper acts and arguments by Suffolk in this case and the Court's findings of bad faith overwhelmingly satisfy the prerequisites of Section 303(i)(2) and fall squarely within the categories of misconduct that courts identify as warranting punitive damages. *See, e.g.*, *Kidwell*, 158 B.R. at 217 (collecting cases and recognizing that "[u]nder all approaches, [] a materially false statement in support of an involuntary petition constitutes bad faith" supporting punitive damages); *Anmuth*, 600 B.R. at 203 (punitive damages appropriate where an involuntary petition was filed "in a blatant attempt to circumvent the pending state court litigation between the parties . . . and without regard to the requirements of the Bankruptcy Code"); *see also In re Mi La Sul*, 380 B.R. 546, 551–57 (Bankr. C.D. Cal. 2007) (finding bad faith where involuntary petitions were filed to halt foreclosure proceedings). These precedents underscore the need for a meaningful award of punitive damages to

Case: 25-51774    Doc# 54    Filed: 02/20/26    Entered: 02/20/26 11:43:53    Page 16 of 19
Case No. 5:25-BK-51774

address Suffolk's misconduct.

In determining the appropriate amount of punitive damages, courts consider factors including "the degree and nature of the wrong to the debtor, the intent of the creditors, [] any surrounding aggravating or mitigating circumstances," and "the petitioning creditors' net worth," to ensure the award serves its punitive and deterrent purposes. *Anmuth*, 600 B.R. at 202–03. Here, the Court's findings reflect intentional misconduct with foreseeable harm to The Fay and other stakeholders, and no mitigating factors at all. Moreover, Suffolk's substantial financial resources confirm that only a meaningful punitive award will achieve deterrence. Suffolk is one of the largest private companies in the United States and publicly represents that it generates over $9 billion in annual revenue. (*See* Schiller Declaration Ex. 4). Anything less than a substantial punitive award would have no deterrent effect in light of Suffolk's size and resources. *See In re Landmark Distributors, Inc.*, 189 B.R. 290, 317 & n.40 (Bankr. D.N.J. 1995) (considering petitioners' income and assets when assessing punitive damages under Section 303(i)(2)).

On this record, a punitive damages award of $1,700,000 is fully justified. It reflects the seriousness of the misconduct the Court identified and is necessary to deter Suffolk and other creditors from misusing the involuntary process. The requested amount is also a measured and appropriate multiple of the fees and costs The Fay was forced to incur (less than 2:1). *See Sunbelt*, 608 F.3d at 466 (for due process purposes, relevant ratio may be measured against fees and costs incurred defending the petition); *State Farm Mut. Auto. Ins. Co. v. Campbell*, 538 U.S. 408, 425 (2003) (single-digit multipliers are ordinarily permissible). That principle is especially apt here because the compensatory relief—attorneys' fees incurred to defeat an improper filing on an expedited basis—understates the broader harm created by falsely invoking the automatic stay and forcing a business into emergency bankruptcy defense. *See Cent. Park Ests.*, 485 B.R. at 76 (abuse of the involuntary process "harm[s] the entire legal system"). A meaningful punitive award is therefore required to accomplish the dual aims of punishment and deterrence and is fully consistent with Section 303(i)(2). *See In re John Richards Homes Bldg. Co., L.L.C.*, 439 F.3d 248, 265–66 (6th Cir. 2006) (upholding a $2,000,000 punitive damages award under Section 303(i)(2)).

Case: 25-51774   Doc# 54   Filed: 02/20/26   Entered: 02/20/26 11:43:53   Page 17 of
Case No. 5:25-BK-51774
19

### III. Suffolk and the Joinder Petitioners Should Be Held Jointly and Severally Liable for the Award.

Courts have discretion to allocate liability for Section 303(i) awards among all petitioners, including those who join under Section 303(c). *See Anmuth*, 600 B.R. at 205; *Kidwell*, 158 B.R. at 216. This reflects the prevailing rule that "any petitioning creditor in an involuntary case, whether signing the initial petition or later joining as a petitioner under section 303(c), should expect to pay the debtor's attorney's fees and costs if the petition is dismissed." *Kidwell*, 158 B.R. at 217. This rule is sensible: each petitioner contributes to initiating or perpetuating an involuntary case and to the costs imposed on the alleged debtor.

Here, the Court should impose joint and several liability on Suffolk and the four joinder petitioners, BEI Construction, Inc., United Systems Fire & Security, Silicon Valley Mechanical, Inc., and Iron Mechanical, Inc. Although Suffolk led the effort, the bare-bones Joinders added no substance and were submitted solely to prop up a petition that was already incurably deficient under Section 303(b). The Court found that the unsecured portions of the Joinders' claims collectively amounted to only $2,362.50, "far below" the $21,050 statutory requirement. (Order at 7).

Despite their substantive deficiencies, the Joinders materially increased the burden and cost imposed on The Fay. Their filings necessitated additional factual investigation into their respective claims, additional legal argument in The Fay's briefing, and additional preparation in advance of the December 11, 2025 hearing. Had the Joinders not been filed, the Petition could have been dismissed on a straightforward failure to satisfy Section 303(b)'s numerosity requirement. Instead, The Fay was forced to address further (though equally meritless) arguments and filings. This is precisely the kind of unnecessary litigation expense Section 303(i) is designed to shift away from an alleged debtor who is forced to defend against an unjustified involuntary filing.

Joint and several liability is also warranted as a matter of equity and deterrence, two core purposes underlying Section 303(i). Allowing any joining petitioner to evade responsibility would encourage strategic free-riding, where creditors join a defective petition to increase pressure while attempting to minimize their exposure. The Court should reject that tactic: joining petitioners "cannot simply turn a blind eye, expecting willful ignorance to protect [them]. . . . They must bear the

14

Case: 25-51774    Doc# 54    Filed: 02/20/26    Entered: 02/20/26 11:43:53    Page 18 of 19

responsibility for having allowed [Suffolk] to file and prosecute an irresponsible, abusive involuntary petition in [their] name." *Anmuth*, 600 B.R. at 206 (internal quotation marks omitted). Having voluntarily aligned themselves with a petition the Court found plainly defective and filed for an improper purpose, the joining creditors should be held to the consequences of that choice.

## CONCLUSION

For the foregoing reasons, The Fay respectfully requests that this Court grant the motion and enter an order (a) awarding The Fay its reasonable attorneys' fees and costs pursuant to Section 303(i) in the amount of $873,158.46 incurred in connection with this involuntary case (including filing this motion) as evidenced by the summary of fees attached as Exhibit 3 to the Schiller Declaration filed contemporaneously herewith, without prejudice to supplementing its request to capture additional work that may become necessary, and (b) awarding The Fay $1,700,000 in punitive damages.

Dated: February 20, 2026

Respectfully submitted,

BOIES SCHILLER FLEXNER LLP

By:   */s/ Joshua I. Schiller*   
      Joshua I. Schiller

Joshua I. Schiller (SBN 330653)
44 Montgomery Street, 41st Floor
San Francisco, CA 94104
Telephone: (415) 293-6800
jischiller@bsfllp.com

Robert D. Gordon (*pro hac vice*)
55 Hudson Yards, 20th Floor
New York, NY 10001
Telephone: (212) 446-2372
rgordon@bsfllp.com

*Attorneys for Alleged Debtor The Fay San Jose, LLC*

Case: 25-51774    Doc# 54    Filed: 02/20/26    Entered: 02/20/26 11:43:53    Page 19 of 19

Case No. 5:25-BK-51774